D/F

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
RENEE CAMOIA,

                     Plaintiff,

      -against-

THE CITY OF NEW YORK, DR. ELOISE
ARCHIBALD, DR. MICHAEL MARSHALL,
SERGEANT LANARIS, SERGEANT
HAMILTON, and SERGEANT WHYE,

                     Defendants.
------------------------------------------------------------------X

**MEMORANDUM & ORDER**

09-CV-2545 (NGG) (LB)

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff Renee Camoia brings this employment-discrimination action against the City of New York and several employees of the New York City Police Department ("NYPD") (Dr. Eloise Archibald, Dr. Michael Marshall, Sergeant Lanaris, Sergeant Hamilton, and Sergeant Whye). Plaintiff alleges that Defendants violated her rights under the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq. (the "ADA"), the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), et seq. ("Title VII"), 42 U.S.C. § 1983, the New York State Human Rights Law, N.Y. Exec. Law § 290, et seq. ("NYSHRL"), and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101, et seq. ("NYCHRL"), by subjecting her to disparate treatment and a hostile work environment as an NYPD recruit on the basis of a perceived disability and her gender. (Third Am. Compl. ("TAC") (Dkt. 53).)

Defendants move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. (Mot. (Dkt. 105).) The court referred Defendants' motion to Magistrate Judge Lois Bloom, who prepared a report and recommendation ("R&R") advising that the motion should be granted as to Plaintiff's claims of gender discrimination and a hostile work environment and denied as to Plaintiff's ADA, NYSHRL, and NYCHRL claims of disparate

1

treatment based on a perceived disability. (R&R (Dkt. 112).) Defendants timely objected to the portions of the R&R that recommended denying Defendants' motion in part. (Defs. Objs. (Dkt. 114).) For the following reasons, the R&R is ADOPTED IN PART and MODIFIED IN PART, and Defendants' summary-judgment motion is GRANTED as to all of Plaintiff's claims.

I. BACKGROUND

The R&R clearly sets forth the extensive background of this case (R&R at 2-18), and the parties have not objected to Magistrate Judge Bloom's statement of facts and procedural history. The court thus adopts the R&R in this respect and offers the following summary to guide the analysis below. See Dong v. Miller, 16-CV-5836 (NGG), 2018 WL 1445573 (E.D.N.Y. March 23, 2018), at *2 (adopting an R&R's statement of facts because the parties had not objected to it).

A. Facts

1. Plaintiff's Initial Screening Process

In November 2007, Plaintiff began the standard screening process to become an NYPD officer. (R&R at 2.) As part of this process, she underwent a battery of physical, psychological, and medical fitness screenings and was required to provide extensive information concerning her medical and psychological history. (Id.) In filling out various questionnaires, she repeatedly denied ever having taken any controlled substance, having required treatment by a physician, osteopath, chiropractor, or psychiatrist, or having any history of nervousness, mental problems, or an emotional disorder. (Id. at 2-4.) She did this despite being advised that any falsification or omission of information from her application might result in her termination. (Id. at 4.) She did acknowledge during an interview with an NYPD psychologist, however, that she had been nervous when giving classroom presentations in college but did not disclose that she had been

prescribed Xanax and Zoloft. (Id. at 4.) On January 7, 2008, after completing the screening process, Plaintiff was appointed to the position of Police Officer and assigned to the NYPD Police Academy (the "Academy") for training. (Id. at 4.)

2. Investigation of Anonymous Calls

In March 2008, Sergeant Lanaris—an employee in the office of the NYPD Deputy Commissioner of Training, Investigations Unit ("DCT IU") who was responsible for investigating allegations made against recruits—received three telephone calls about Plaintiff from the same anonymous caller. (Id.) This caller stated that she was a member of Plaintiff's family and was calling to report that Plaintiff suffered from bipolar disorder and was on medication, and that Plaintiff's parents were afraid of Plaintiff having access to a gun. (Id. at 4-5.) Lanaris then interviewed Plaintiff's mother and brother, who denied the allegations. (Id. at 5.) Plaintiff's mother told Plaintiff about the anonymous caller. (Id.) Plaintiff believed the caller was an ex-boyfriend and discussed the calls with the Academy's Human Resources Office ("HR"). (Id.) Although the HR officers knew nothing about the anonymous calls, they told her that a few other recruits had complained that she was hard to work with. (Id.) These comments upset Plaintiff but did not result in her suffering any adverse employment action. (Id.)

In late March 2008, the same anonymous individual called Dr. Archibald, the Director of the Psychological Services Section ("PSS")[1] of the NYPD, twice. (Id. at 6-9.) This caller said that Plaintiff had a bad temper, a history of emotional problems, and may have been on medication; however, the caller did not tell Dr. Archibald that Plaintiff had bipolar disorder. (Id.

---

[1] PSS performs psychological evaluations of prospective NYPD employees, as well as active employees when PSS receives information regarding the employee's pre-employment behavior that might merit further evaluation of the officer's suitability for their position. (R&R at 9.) PSS is tasked with ensuring that an individual does not have any kind of psychological problem that would interfere with their duty to carry out a police officer's essential functions and that the individual can withstand a very high level of stress. (Id.)

3

at 6.) The caller also told Dr. Archibald that Plaintiff had assaulted a family member three years earlier, and that Plaintiff's sister-in-law, Jen Camoia, would not permit her children to be in Plaintiff's home once Plaintiff had a gun as she was afraid Plaintiff would kill someone. (Id. at 6-7.) Additionally, this individual provided Dr. Archibald with the names of family members who could discuss Plaintiff's psychiatric history, including Jen Camoia. (Id. at 7.)

Dr. Archibald told the DCT IU about the anonymous calls she received, offered her assistance to Lanaris's investigation, and requested that a domestic violence inquiry be made regarding Plaintiff's residence. (Id.) Then, on or about March 26, 2008, Lanaris interviewed Jen Camoia, who told him that the anonymous caller was Plaintiff's cousin and denied knowledge of Plaintiff having bipolar disorder or any other mental disorder. (Id.) On March 27, 2008, Lanaris shared recordings of his interviews of Plaintiff's family members with Dr. Archibald, whose impression was that both Jen Camoia and Plaintiff's brother had concerns about Plaintiff's fitness to be a police officer but were reluctant to give details to Lanaris. (Id. at 7-8.) After his meeting with Dr. Archibald, Lanaris concluded his portion of the investigation because he was transferring out of DCT IU. (Id. at 9.) Lanaris did not determine whether the allegations regarding Plaintiff were substantiated and was not involved in any determination concerning Plaintiff's employment status. (Id.)

Later, during the first week of April 2008, Dr. Archibald spoke to Jen Camoia. (Id. at 8.) The parties dispute whether the anonymous caller was also on the line and whether Camoia made statements during the call that suggested a concern that Plaintiff might do something dangerous. (Id.) On April 7, 2008, the anonymous caller informed Dr. Archibald that she and Jen Camoia were dropping the matter because the latter was afraid to continue talking to Dr. Archibald. (Id.)

4

### 3. Dr. Marshall's First Psychological Reevaluation of Plaintiff

Based on the concerns raised during the DCT IU investigation, Dr. Archibald decided that a further psychological evaluation of Plaintiff was warranted. (Id. at 10.) Dr. Marshall, another NYPD psychologist, was assigned to do the reevaluation. (Id. at 11.) On May 7, 2008, he met with Plaintiff and asked her questions concerning her family, psychological treatment, medication for psychological issues, depression, mania, anxiety, psychosis, and bipolar disorder. (Id.) Plaintiff denied any history of psychological conditions (including anxiety), psychological treatment, and being "medicated" for any mental illness. (Id.) At the end of the meeting, however, Plaintiff admitted that she had been prescribed anti-anxiety medication. (Id. at 12.)

### 4. Plaintiff's Medical History

Dr. Marshall then reviewed Plaintiff's medical records from Long Island Medical Center. (Id. at 12.) These records show that Plaintiff was prescribed Zoloft on April 17, 2002, and include an entry dated October 19, 2005, reflecting that Plaintiff had tried Zoloft but stopped using it as she did not like it. (Id.) Plaintiff states that, other than in 2002, she was never prescribed or treated with Zoloft. (Id.) Additionally, Plaintiff was prescribed Xanax on October 19, 2005, for nervousness she experienced during school presentations, but was advised by her doctor that she did not need it. (Id.) Plaintiff claims that she never took Xanax (id.), even though a medical record entry dated February 2, 2006, indicated that she was taking it at that time (Pl. Resp. to Def. 56.1 Statement ("Pl. 56.1") (Dkt. 107-1) ¶¶ 137-38.)

The parties dispute whether Plaintiff's medical records indicate a history of anxiety, that she suffers panic attacks in conjunction with migraines, and that she exhibited symptoms of anxiety in February 2006.[2] (See id. at 13; Pl. 56.1 ¶¶ 128, 129.) They also dispute whether her

---

[2] Plaintiff states that, contrary to Defendants' assertion, her medical records do not reflect that she "always" gets panic attacks when she suffers migraines, but rather that during a period before applying to the NYPD in November

medical records reveal a more significant history of medication and psychological symptoms than she had previously disclosed to the NYPD. (R&R at 12.) According to Defendants, the NYPD requires assurances that potential officers are not likely to have panic attacks while performing their duties because it would be "extremely dangerous" for a police officer to have a panic attack on duty. (Pl. 56.1 at 92-93.)

### 5. Dr. Marshall's Second Psychological Reevaluation of Plaintiff

Dr. Marshall discussed his findings with Dr. Archibald, who determined that Dr. Marshall should conduct a second interview of Plaintiff to obtain further information regarding her symptoms. (Id.) This second interview took place on May 28, 2008. (Id.)

At this interview, Plaintiff admitted that she had felt anxiety when giving classroom presentations and had been prescribed Zoloft and Xanax. (Pl. 56.1 ¶¶ 151-52.) When asked why she would refill her Xanax prescription if she had never taken Xanax, Plaintiff said that she threw the pills from her first prescription away but could not explain why. (R&R at 14.) Dr. Marshall believed that Plaintiff's answer indicated a "high probability" that she had in fact taken Xanax and left the interview with concerns about her psychological suitability to be a police officer. (Id. at 14; Pl. 56.1 ¶¶ 158, 162.)

There is no admissible evidence that Dr. Marshall treated Plaintiff differently than any similarly situated male recruits. (Pl. 56.1 ¶¶ 166-67.)

### 6. Plaintiff's Restricted Duty Assignment

Based on Dr. Marshall's psychological evaluation, Dr. Archibald determined that Plaintiff should be placed on restricted duty starting on June 11, 2008, and temporarily prevented

---

2007, she experienced panic attacks while taking Ephedra, a fat-burning pill. (Pl. Resp. to Def. 56.1 Statement ("Pl. 56.1") (Dkt. 107-1) ¶¶ 128.)

from obtaining a firearm. (R&R at 15.) Plaintiff was removed from her Academy class and sent to a room with 10-15 other holdover recruits. (Id.) This group was comprised of equal numbers of men and women. (Id.)

Sergeant Hamilton, a squad supervisor at the academy, was responsible for supervising recruits on restricted duty. (Id.) According to Plaintiff, Hamilton ordered the men and women in her group to clean the locker room and mop the floors and hallways of the Academy gymnasium. (Id.) The parties dispute whether cleaning assignments were based on gender. (Id.) Plaintiff claims that the females were required to clean the kitchen because Hamilton said that women "have the special touch." (Pl. 56.1 ¶ 179.) Hamilton denied this. (Id. ¶ 184.) Furthermore, Plaintiff asserts that she once had to scrape gum off the gym floor and, when she gave the scraper to male holdovers, they threw it back at her and refused to help. (R&R at 15-16; Pl. 56.1 ¶ 182.) Plaintiff remained on restricted duty for several months. (R&R at 16.)

### 7. Plaintiff's Separation from the NYPD

In July 2008, Dr. Marshall issued the following psychological evaluation of Plaintiff:

> [Plaintiff's history] indicates a high susceptibility to stress-related conditions. The high-stress nature of police work would likely result in impairment of her ability to handle her duties in a safe and effective manner. Additionally, her lack of forthrightness throughout all three of her interviews is of great concern. As a result of her history of poor stress tolerance, she is not psychologically suitable for police work. Additionally, had the aforementioned information been made available during her initial pre-employment evaluation, she would have been deemed psychologically unsuitable at that time.

(R&R at 16.) Dr. Archibald agreed with Dr. Marshall's recommendation that Plaintiff was not psychologically suited for police work. (Id.) In Dr. Archibald's view, Plaintiff's tendency to become anxious would prevent her from suitably performing her functions. (Id.)

Plaintiff contends that there was no medical evidence that would have led anyone to believe that Plaintiff had mental health issues during her time with the NYPD. (Id. at 17.) Her

7

issues with nerves while giving class presentations predated her hiring, and before the anonymous calls were made she had passed the NYPD's psychological tests. (Id. at 17.)

On July 18, 2008, the NYPD's Employee Management Division Committee convened to review Plaintiff's suitability to continue as a probationary police officer and unanimously recommended that Plaintiff be separated from the NYPD. (Id.) Plaintiff was terminated from her employment on August 27, 2008. (Id.)

## B. Procedural History

Plaintiff commenced this suit on June 12, 2009. (Compl. (Dkt. 1).) She amended her complaint three times. (R&R at 17-18.) On February 3, 2014, Defendants' motion to dismiss the TAC was granted in part and denied in part by Judge Townes.[3] (Memorandum & Order (Dkt. 63).) After Judge Townes's ruling on the motion to dismiss, Plaintiff's following claims remained:

1. ADA claims for disparate treatment and a hostile work environment based on a perceived disability (specifically, based on Defendants' alleged belief that Plaintiff suffered from bipolar disorder);

2. Title VII claims for disparate treatment and a hostile work environment based on gender;

3. NYSHRL and NYCHRL gender and perceived-disability claims; and

4. A § 1983 equal protection claim based on gender.

(See R&R at 18.) Defendants moved for summary judgment on all claims (Mot.), and Magistrate Judge Bloom advised in her R&R that Defendants' motion should be granted as to Plaintiff's claims of gender discrimination and a hostile work environment and denied as to

---

[3] This case was reassigned to this court in February upon Judge Townes's death.

Plaintiff's ADA, NYSHRL, and NYCHRL claims of disparate treatment based on a perceived disability. (R&R at 36.)

Defendants timely objected to the portions of the R&R that recommended denying Defendants' motion in part. (Defs. Objs. (Dkt. 114).) Defendant argues that Plaintiff's ADA and NYSHRL claim must fail because she cannot show that Defendants perceived her to have a disability, that she was qualified to be a police officer, or that Defendants' proffered reasons for her termination were pretext for disability discrimination. (Id. at 5-19.) Further, Defendant contends that Plaintiff's NYCHRL claim must fail because there is no genuine dispute as to whether Plaintiff's termination was caused by Defendants' alleged belief that she had bipolar disorder. (Id. at 19-20.)

## II. LEGAL STANDARD

### A. Review of a Magistrate Judge's R&R

When a party timely objects to a magistrate judge's R&R, the court reviews de novo "those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C); accord Fed. R. Civ. P. 72(b)(3). The court otherwise reviews the R&R for clear error. Dong, 2018 WL 1445573, at *5. "Where objections are merely perfunctory responses and not specific and clearly aimed at particular findings in the magistrate judge's proposal, clear error, and not de novo, review applies." Perez v. Lee, No. 14-CV-5763 (JPO), 2018 WL 740995, at *2 (S.D.N.Y. Feb. 7, 2018) (internal quotation marks, citations, and emphasis omitted).

### B. Summary Judgment

A court must grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

9

R. Civ. P. 56(a). "A 'material' fact is one capable of influencing the case's outcome under governing substantive law, and a 'genuine' dispute is one as to which the evidence would permit a reasonable juror to find for the party opposing the motion." Figueroa v. Mazza, 825 F.3d 89, 98 (2d Cir. 2016) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). "The movant may discharge this burden by showing that the nonmoving party has 'fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Lantheus Med. Imaging, Inc. v. Zurich Am. Ins. Co., 255 F. Supp. 3d 443, 451 (S.D.N.Y. 2015) (alteration in original) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). "'The mere existence of a scintilla of evidence' in support of the non-movant will be insufficient to defeat a summary judgment motion." Transflo Terminal Servs., Inc. v. Brooklyn Res. Recovery, Inc., 248 F. Supp. 3d 397, 399 (E.D.N.Y. 2017) (quoting Liberty Lobby, 477 U.S. at 252).

"In determining whether an issue is genuine, '[t]he inferences to be drawn from the underlying affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion.'" SCW W. LLC v. Westport Ins. Corp., 856 F. Supp. 2d 514, 521 (E.D.N.Y. 2012) (quoting Cronin v. Aetna Life Ins. Co., 46 F.3d 196, 202 (2d Cir. 1995)). "[T]he judge's function is not [] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Redd v. N.Y. Div. of Parole, 678 F.3d 166, 173-74 (2d Cir. 2012) (quoting Liberty Lobby, 477 U.S. at 249). However, "[a] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," and "[m]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where

none would otherwise exist." Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (internal quotation marks and citation omitted).

## III. DISCUSSION

### A. Clear Error Review

No party has objected to Magistrate Judge Bloom's recommendation that the court grant summary judgment as to Plaintiff's Title VII, § 1983, NYSHRL, and NYCHRL claims for gender discrimination and her ADA and Title VII claims for a hostile work environment. Accordingly, the court reviews the R&R's analysis of those claims for clear error. Finding none, the court adopts the R&R in this respect and grants summary judgment to Defendants on all of Plaintiff's claims for gender discrimination and a hostile work environment.

### B. De Novo Review of Defendants' Objections

#### 1. ADA Claim for Discrimination Based on a Perceived Disability

Plaintiff alleges that Defendants discriminated against her based upon their mistaken belief that she suffered from bipolar disorder, which constitutes a "mental impairment" under the ADA's accompanying regulations. See Whalley v. Reliance Grp. Holdings, Inc., No. 97-CV-4018 (VM), 2001 WL 55726, at *4 (S.D.N.Y. Jan. 22, 2001) (citing 29 C.F.R. § 1630.2(h)(2)).

ADA claims alleging employment discrimination are analyzed under the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). McMillan v. City of New York, 711 F.3d 120, 125 (2d Cir. 2013); Sista v. CDC Ixis N. Am., Inc., 445 F.3d 161, 169 (2d Cir. 2006). Under this framework, the plaintiff bears the initial burden of establishing a prima facie case of discrimination. Raytheon Co. v. Hernandez, 540 U.S. 44, 49 n.3 (2003); McBride v. BIC Consumer Prod. Mfg. Co., 583 F.3d 92, 96 (2d Cir. 2009) (citing Sista, 445 F.3d at 169). If the plaintiff establishes a prima facie case of discrimination, "[t]he

burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its employment action." Raytheon, 540 U.S. at 49 n.3; accord Ben-Levy v. Bloomberg, L.P., 518 F. App'x 17, 19 (2d Cir. 2013). Once the defendant provides a legitimate, nondiscriminatory reason for the adverse employment action, the burden shifts back to the plaintiff to "produce evidence and carry the burden of persuasion that the proffered reason is a pretext." Sista, 445 F.3d at 169; accord Noel v. BNY-Mellon Corp., 514 F. App'x 9, 11 (2d Cir. 2013) (quoting Cifra v. Gen. Elec. Co., 252 F.3d 205, 216 (2d Cir. 2001)).

To establish a prima facie case of discrimination under the ADA, a plaintiff must show: "(1) the defendant is covered by the ADA; (2) plaintiff suffers from or is regarded as suffering from a disability within the meaning of the ADA; (3) plaintiff was qualified to perform the essential functions of the job, with or without reasonable accommodation; and (4) plaintiff suffered an adverse employment action because of [her] disability or perceived disability." Capobianco v. City of New York, 422 F.3d 47, 56 (2d Cir. 2005).

Magistrate Judge Bloom found that Plaintiff met her prima facie burden. (R&R at 22.) Defendants objected, arguing that there is no genuine issue as to whether Defendants perceived that Plaintiff suffered from bipolar disorder or whether she was qualified to be a police officer. The court agrees with Defendants that Plaintiff cannot show that Defendants believed she had bipolar disorder.

   *a. Perceived Disability*

Under the pre-2009 ADA[4], a plaintiff may have a "perceived disability" if "a covered entity mistakenly believes that [she] has a physical impairment that substantially limits one or

---

[4] As the events alleged by Plaintiff occurred prior to January 1, 2009, the court follows the R&R in applying the ADA and its accompanying EEOC regulations, not the ADA Amendments Act of 2008 and its accompanying regulations. (See R&R at 20-21.) See Wega v. Ctr. for Disability Rights, Inc., 395 F. App'x 782, 784 n.1 (2d Cir.

12

more major life activities."[5] Sutton v. United Air Lines, Inc., 527 U.S. 471, 489 (1999) (superseded by 42 U.S.C. § 12102(3) (2009)). An impairment substantially limits the major life activity of working if an individual is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities." 29 C.F.R. § 1630.2(j)(3)(i) (1991), amended by 29 C.F.R. § 1630.2(j)(1)(ii). "The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." Id. In a perceived-disability case such as this, Plaintiff "bears the burden of demonstrating that her employer 'perceived her to be incapable of working in a broad range of jobs' suitable for one of similar age, experience, and training." See Johnson v. City of New York, 326 F. Supp. 2d 364, 369-70 (E.D.N.Y. 2004) (quoting Ryan v. Grae & Rybicki, P.C., 135 F.3d 867, 872 (2d Cir. 1998)).

Plaintiff cannot meet her burden. It is undisputed that Defendants did not diagnose her with bipolar disorder. (See Pl. 56.1 ¶ 165.) While the anonymous caller did tell Sergeant Lanaris that Plaintiff had bipolar disorder, and these anonymous calls set off a chain of events that ultimately led to Plaintiff's termination, the record indicates that Plaintiff's history of anxiety—which Defendants did not know about until the DCT IU investigation and Dr. Marshall's psychological evaluation—caused Defendants to regard her as susceptible to stress-related conditions, which would impair her ability to perform the high-stress duties of a police officer. (Pl. 56.1 ¶¶ 197-98, 204-05.) "The fact that [D]efendants did not view [Plaintiff] as capable of the rigors of full-duty police work does not mean that Defendants perceived [her] as

---

2016); see also Petrone v. Hampton Bays Union Free Sch. Dist., No. 03-CV-4359 (SLT), 2013 WL 3491057, at *17 n.9 (E.D.N.Y. July 10, 2013) (collecting cases).

[5] "Major life activities" under the pre-2009 ADA include, but are not limited to, "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i) (2006), amended by 29 C.F.R. § 1630.2(i)(1)(i) (2011).

being substantially limited in [her] ability to perform major life activities." Macshane v. City of New York, No. 06-CV-6024 (RRM), 2015 WL 1298423 at *52-53 (E.D.N.Y. Mar. 23, 2015), aff'd sub nom. Herlihy v. City of New York, 654 F. App'x 40, (2d Cir. 2016); see Giordano v. City of New York, 274 F.3d 740, 749-50 (2d Cir. 2001) (holding that plaintiff's "assumption that his disqualification from the specific duties of an NYPD police officer will preclude him from working in related fields—or that the defendants perceived him as such . . . will not suffice to defeat a motion for summary judgment") (citation omitted); Dellavolpe v. City of New York, 673 F. Supp. 2d 111, 117 (E.D.N.Y. 2009) ("[W]hile the NYPD clearly concluded that [plaintiff's] perceived limitations disqualified him from the single job of NYPD police officer, those perceived limitations do not transmute, without more, to a perception by the City that [plaintiff] could not perform either a 'class of jobs' or a 'broad range of jobs in various classes.'")

This case is distinct from a case relied on by both Plaintiff (Pl. Opp'n to Def. Mot. (Dkt. 107-3) at 19) and the R&R (R&R at 22), McCowan v. HSBC Bank USA., 689 F. Supp. 2d 390, 404 (E.D.N.Y. 2010), for three reasons. First, in McCowan there was evidence that the plaintiff's supervisor had made comments suggesting that she believed the plaintiff to be disabled. Id. at 403. Second, the evidence in McCowan indicated that the plaintiff had been reassigned to entry-level work such as filing and answering phones because her supervisor believed those were the only tasks that the plaintiff could perform, which supported an inference that plaintiff's supervisor believed she was substantially limited her ability to work in jobs. Id. at 403-04. Here, Plaintiff was given cleaning duties not because Defendants thought those were the only work-related tasks she could perform, but because this was the standard assignment for recruits like Plaintiff that were not yet ready for full police duty. (See Pl. 56.1 ¶¶ 173, 175, 178,

14

187.) Indeed, 10-15 other holdover recruits were on restricted duty at the same time as Plaintiff. (Id. ¶¶ 173, 175.) Thus, Plaintiff's reassignment does not suggest that Defendants believed she had a disability. C.f. Macshane, 2015 WL 1298423 at *52-53; Dellavolpe, 673 F. Supp. 2d at 117. Third, the employer in McCowan was a financial institution, not a police department. Id. at 394. Police departments are permitted greater discretion in employment decisions because police officers carry firearms and face high-stress situations, and any lapse in judgment on their part can threaten the health or safety of others. See Howard v. City of New York, 62 F. Supp. 312, 321 n.10 (S.D.N.Y. 2014); c.f. Nelson v. City of New York, No. 11-CV-2732 (JPO), 2013 WL 4437224, at *12 (S.D.N.Y. Aug. 19, 2013) (citing D'Amico v. City of New York, 132 F.3d 145, 151 (2d Cir. 1998)). While a financial institution's decision to terminate an employee might imply a belief that the employee was also incapable of performing a "broad class of jobs compared to the average person of comparable training, skills, and abilities," a police department's decision to terminate an officer does not. See Giordano, 274 F.3d at 749-50.

In sum, Plaintiff cannot establish that Defendants terminated her because they believed she suffered from bipolar disorder. Accordingly, Defendants are entitled to summary judgment on Plaintiff's ADA claim.[6]

### 2. NYSHRL Claim for Discrimination Based on a Perceived Disability

As Magistrate Judge Bloom recognized (R&R at 33), "[c]laims under the NYSHRL are construed pursuant to the same standards as its federal counterparts, including . . . the ADA." Julius v. Dep't of Human Res. Admin., No. 08-CV-3091 (PKC), 2010 WL 1253163, at *5 (S.D.N.Y. Mar. 24, 2010) (citing Weinstock v. Columbia Univ., 224 F.3d 33, 42 n.1 (2d Cir.

---

[6] As Defendants are entitled to summary judgment because Plaintiff has not shown that Defendants perceived her as having a disability, the court need not consider Defendants' other objections to Magistrate Judge Bloom's recommendation that the court deny them summary judgment on Plaintiff's ADA claim.

2000)). Defendants contend that, because Plaintiff's ADA claim fails, her NYSHRL claim fails as well. (Def. Objs. at 16 n.4.) The court agrees and grants summary judgment for Defendants on Plaintiff's NYSHRL claim.

### 3. NYCHRL Claim for Discrimination Based on a Perceived Disability

Magistrate Judge Bloom recommended that the court deny the summary judgment motion as to Plaintiff's NYCHRL perceived-disability discrimination claim for the same reasons that she advised denying the motion as to Plaintiff's ADA and NYSHRL claims, and because NYCHRL claims are subject to a more lenient standard. (R&R at 33-34.) Defendants objected. (Def. Objs. at 18-19.) They repeated the arguments they had made regarding Plaintiff's ADA claim, and also contended that Plaintiff had not shown she was treated worse than any similarly situated employees. (Id.)

NYCHRL claims are analyzed separately and under a more liberal standard than ADA or NYSHRL claims. See Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 109 (2d Cir. 2013). As Magistrate Judge Bloom acknowledged (R&R at 34), "[t]he NYCHRL does not differentiate between discrimination and hostile work environment claims; rather, both are governed by N.Y.C. Admin. Code § 8-107(1)(a)." Weber v. City of New York, 973 F. Supp. 2d 227, 262 (E.D.N.Y. 2013). "The proper inquiry under the NYCHRL is whether a plaintiff 'was treated less well because of her [perceived disability].'" Richards v. N.Y.C. Dept. of Educ., No. 13-CV-16 (VEC), 2015 WL 4164746, at *10 (S.D.N.Y. July 10, 2015) (quoting Mihalik, 715 F.3d at 111). "Although 'a jury is often best suited to make this determination, . . . summary judgment still can be an appropriate mechanism for resolving NYCHRL claims." Id. (quoting Mihalik, 715 F.3d at 111). "A defendant is entitled to summary judgment 'if the record

16

establishes as a matter of law that discrimination played no role in its actions.'" Id. (quoting Mihalik, 715 F.3d at 110 n.8).

For the same reasons discussed above in connection with Plaintiff's ADA claim, Defendants are entitled to summary judgment on Plaintiff's NYCHRL claim. No reasonable juror could find that Defendants perceived Plaintiff to have a disability or that Defendants treated her less well because of it. Rather, the evidence overwhelmingly suggests that Plaintiff was terminated because her history of anxiety led Defendants to regard her as susceptible to stress-related conditions, which would impair her ability to serve as a police officer. (Pl. 56.1 ¶¶ 197-98, 204-05.) Plaintiff has adduced no evidence that she was treated worse than any similarly situated officers who had comparable anxiety issues or who failed to disclose relevant information during their initial psychological screening. See Richards, 2015 WL 4164746, at *10, *12 (granting summary judgment to the defendant on an NYCHRL disability discrimination claim in part because the plaintiff had not shown that her employer treated her less well than other similarly situated employees). In fact, she has not even identified any similarly situated employees with whom the court might compare her treatment. Because she cannot show that disability discrimination played a role in her termination, Defendants are entitled to summary judgment on Plaintiff's NYCHRL claim. See id. at *10 (quoting Mihalik, 715 F.3d at 111 n.8).

## IV. CONCLUSION

For the foregoing reasons, the court ADOPTS IN PART and MODIFIES IN PART the R&R (Dkt. 112). Defendants' Motion for Summary Judgment (Dkt. 105) is GRANTED IN FULL. The Clerk of Court is respectfully DIRECTED to enter judgment for Defendants and close this case.

SO ORDERED.

Dated: Brooklyn, New York
October 16, 2018

s/Nicholas G. Garaufis
NICHOLAS G. GARAUFIS
United States District Judge